UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NANCY DAWKINS,

Plaintiff,

-against-

NEW YORK CITY BOARD OF ELECTIONS; COMMISSIONERS IN THEIR OFFICIAL CAPACITIES,

Defendants.

25-CV-10827 (LLS)

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

Plaintiff, who is appearing *pro se*, brings this action under 42 U.S.C. § 1983, challenging the results of the 2025 New York City Mayoral Election. Named as Defendants are the New York City Board of Elections ("NYC BOE") and the NYC BOE Commissioners in their official capacities. By separate order, the court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. The Court dismisses the complaint for the reasons set forth below.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.*

## BACKGROUND

### A. Procedural history

Plaintiff Nancy Dawkins attempts to bring this action as a class action, and, along with the complaint, she also filed a motion for preliminary injunctive relief. By order dated January 20, 2026, Chief Judge Laura Taylor Swain denied Plaintiff's request for preliminary injunctive relief. (ECF 11.) In that same order, the court denied Plaintiff's request to proceed with this action as a class action because, as a nonlawyer, Plaintiff cannot bring claims on behalf of others or act as a class representative to bring a class action. (*Id.* at 1-2.)

Chief Judge Swain also noted that, perhaps because Plaintiff was attempting to bring this action as a class action, the allegations in the complaint were not personal to Plaintiff. For

example, the complaint asserts claims on behalf of "Plaintiff(s) . . . including a registered voter and candidate(s)." (ECF 1, at 1.) Because Plaintiff can only assert claims on her own behalf, Chief Judge Swain directed her, within 30 days, to file an amended complaint that includes only allegations and claims for relief that are personal to her. The order further directed Plaintiff to "state whether she is a registered voter and/or candidate for office during the 2025 mayoral election, and should describe only the harm and injuries that she personally suffered." (ECF 11, at 2.)

On February 18, 2026, Plaintiff filed a letter-motion requesting a 90-day extension of time to file an amended complaint (ECF 12, 13),[1] which Chief Judge Swain granted by order dated February 26, 2026 (ECF 14). Chief Judge Swain's order warned Plaintiff that if she did not file an amended complaint within the time prescribed, the court would treat the original complaint as the operative pleading in this action. (*Id.* at 2.) On March 10, 2026, Plaintiff filed an application for the court to request pro bono counsel (ECF 15), which Chief Judge Swain denied on May 22, 2026 (ECF 16.) Plaintiff has not filed an amended complaint. The Court, therefore, will treat the original complaint as the operative pleading.

**B. Plaintiff's allegations**

The following facts are drawn from the complaint and supplemented by a declaration that Plaintiff filed in support of her motion for preliminary injunctive relief.[2] As noted above, Plaintiff purports to bring this action on behalf of a class of individuals that include "a registered voter in New York City and candidate(s) for public office who were eligible to vote and to have votes cast and counted in accordance with law in the 2025 New York City Mayoral Election."

[1] Plaintiff filed two copies of her letter-motion.

[2] The Court quotes from Plaintiff's submissions verbatim. All spelling, grammar, and punctuation are in the original documents unless noted otherwise.

(ECF 1, at 2.) In her declaration in support of her request for preliminary injunctive relief, Plaintiff alleges that she is a registered voter in the City of New York. (ECF 6, at 1.) In none of her submissions does Plaintiff allege that she was a candidate in the 2025 Mayoral Election or that she voted in that election. Plaintiff asserts equal protection and due process claims "arising from the administration, tabulation, reporting, and certification of the 2025 New York City Mayoral Election." (ECF 1, at 1.) She brings this action to "restore lawful, transparent, and rule-bound election administration, to prevent the entrenchment of results allegedly derived from non-statutory, opaque, and arbitrary practices." (*Id.*)

Plaintiff asserts that the NYC BOE "failed and refused" to certify the results of the 2025 Mayoral Election "in accordance with statutory requirements." (*Id.* at 2.) Plaintiff also points to various "irregularities" she believes she has identified in the administration of the election based on her understanding of a report issued by the NYC BOE, excerpts of which are attached to her declaration. For example, Plaintiff alleges that:

- According to NYC BOE official election results, 1,792 votes were attributed three election districts labeled "Woodlawn Cemetery," a location Plaintiff asserts is "not a lawful polling place or statutorily authorized election district."[3] (*Id.* at 2.)
- 24,443 ballots "were cast but not recorded or reported."[4] (*Id.* at 3.)
- The NYC BOE election results included a category of ballots labeled "Permanent Absentee Voters," even though New York election law does not use that term, but

---

[3] Copies of pages from the NYC BOE election results that Plaintiff includes in her declaration show that the districts in question are for "Wakefield-Woodlawn" Election Districts 41-32 in the Bronx, and include the residential areas surrounding the cemetery. (*See* ECF 6, at 7-9.)

[4] In support of this allegation, Plaintiff points to a single line labeled "unrecorded" that appears at the end of a table without any context. (*See* ECF 6, at 6.)

instead refers to "absentee ballots and certain categories such as military and permanently disabled voters." (*Id.*) Plaintiff asserts that all 158,233 ballots cast outside of New York City by absentee voters are therefore invalid. (*Id.*)

- The NYC BOE election results include a designation "+9 points" for Mayor Mamdani without explanation, which Plaintiff asserts is arbitrary.[5] (*Id.*)
- The published vote totals show that Mayor Mamdani received 50.219% of the vote, not 50.9% of the vote as stated in the NYC BOE report.[6] (*Id.*)

Plaintiff also alleges that Defendants failed to respond to questions "regarding campaign finance compliance and candidate eligibility," presumably submitted to them by Plaintiff. (*Id.*)

Plaintiff asserts claims that Defendants "treated similarly situated voters differently by counting and aggregating ballots under unlawful district and voter classifications while subjecting lawful ballots to statutory safeguards" in violation of the Equal Protection Clause. Defendants also violated the Due Process Clause by "administering the election in an opaque, non-statutory manner that deprived voters and candidates of notice, transparency, and meaningful procedures to verify, audit, and challenge results." (*Id.* at 4.) Finally, Plaintiff asserts that Defendants violated 52 U.S.C. § 10307(a) when they "failed to count and report thousands of ballots case by eligible voters."[7] (*Id.*)

---

[5] It is clear from the context of the NYC BOE report that the designation "+9 points" referred to by Plaintiff is the number of percentage points by which Mayor Mamdani defeated runner-up Andrew Cuomo. (*See* ECF 6, at 14.)

[6] Again, the NYC BOE report Plaintiff attaches to her declaration belies her claims. That document, which includes the certified results from all election districts, shows that Mamdani received 1,114,184 votes of 2,187,998 total votes cast, which equates, as reported by the NYC BOE, to 50.9% of votes cast. (*See* ECF 6, at 14.)

[7] Section 10307(a) is a provision of the Voting Rights Act that prohibits state actors from refusing to permit an eligible voter to vote, or "willfully fail[ing] or refus[ing] to tabulate, count, and report such person's vote." 52 U.S.C. § 10307(a).

Plaintiff seeks declaratory and injunctive relief "requiring Defendants to preserve election materials; segregate and identify ballots cast or counted under unlawful classifications; provide an accounting of unrecorded ballots; and refrain from certification or reliance on challenged results pending judicial review." (*Id.* at 5.)

**DISCUSSION**

**A. Plaintiff lacks standing**

The Court dismisses the complaint because Plaintiff lacks standing to bring her claims. "Article III, Section 2, of the Constitution limits the jurisdiction of the federal courts to the resolution of cases and controversies." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (citation and internal quotation marks omitted). "Standing to sue . . . is an aspect of the case-or-controversy requirement." *Arizonians for Off. Eng. v. Arizona*, 520 U.S. 43, 64 (1997).

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). The injury must also be "concrete"; "that is, it must actually exist." *Id.* at 339–40.

The Supreme Court has

> consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.

*Lance v. Coffman*, 549 U.S. 437, 439 (2007) (quoting *Lujan*, 504 U.S. at 573–74); *see also* *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]he Court has held that when the asserted harm is

a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction.").

In short, standing requires a litigant to have "a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues." *Baker v. Carr*, 369 U.S. 186, 204 (1962). For example, "a voter fails to present an injury-in-fact [for the purpose of standing] when the alleged harm is abstract and widely shared or is only derivative of a harm experienced by a candidate." *Crist v. Comm'n on Presidential Debates*, 262 F.3d 193, 195 (2d Cir. 2001). "[S]tanding to sue may not be predicated upon an interest of the kind . . . [that] is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220 (1974).

Here, Plaintiff does not allege any facts showing that she herself has been disadvantaged. Although she purports to bring claims on behalf of "candidate(s) for public office" (ECF 1, at 2), nowhere in her pleadings does Plaintiff allege that she herself was a candidate in the 2025 New York City Mayoral Election, and she failed to respond when the Court granted her leave to clarify whether she was a candidate. Plaintiff also does not allege that she voted in the 2025 Mayoral Election, undermining her claim that her vote was diluted. Even if the Court assumes that Plaintiff did vote in that election, any assertion that her vote was diluted due to the counting of improperly cast ballots or other perceived ambiguities or errors in the NYC BOE's report of election results amounts to a generalized grievance insufficient to confer Article III standing. *See Crist*, 262 F.3d at 195; *Wis. Voters All. v. Pence*, 514 F. Supp. 3d 117, 120 (D.D.C. 2021) (holding that, to the extent plaintiffs argue they have an interest in government officials conducting an election in conformity with the Constitution, "they merely assert a 'generalized

grievance' stemming from an attempt to have the Government act in accordance with their view of the law"); *Feehan v. Wis. Elections Comm'n*, 506 F. Supp. 3d 596, 609 (E.D. Wis. 2020) (holding that plaintiff lacked standing where his "alleged injuries are injuries that any Wisconsin voter suffers if the Wisconsin election process were, as the plaintiff alleges, so riddled with fraud, illegality, and statistical impossibility" that its results could not be certified); *Moore v. Circosta*, 494 F. Supp. 3d 289, 312-13 (M.D.N.C. 2020) (explaining that "the notion that a single person's vote will be less valuable as a result of unlawful or invalid ballots being cast is not the concrete and particularized injury [that is] necessary for Article III standing"); *Paher v. Cegavske*, 457 F. Supp. 3d 919, 926 (D. Nev. 2020) (holding that "Plaintiffs' purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada voter" and, therefore, fail to allege a "concrete and particularized injury"); *Am. C.R. Union v. Martinez-Rivera*, No. 2:14-CV-0026 (AM) (CW), 2015 WL 13650011, at *7 (W.D. Tex. Feb. 23, 2015) (holding that speculative complaints of "potential vote dilution are nothing but a generalized grievance about government, complaining that an official should be required to follow the law"); *see also Martel v. Condos*, 487 F. Supp. 3d 247, 253 (D. Vt. 2020) ("A vote cast by fraud or mailed in by the wrong person through mistake has a mathematical impact on the final tally and thus on the proportional effect of every vote, but no single voter is specifically disadvantaged.").

Because Plaintiff's allegations about election irregularities amount to a generalized grievance shared by every voter, she lacks standing to being her claims. The Court therefore dismisses this action, for lack of standing and, thus, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Mahon*, 683 F.3d at 62 ("If [a] plaintiff[] lack[s] Article III standing, a

[federal] court has no subject matter jurisdiction to hear [her] claim." (internal quotation marks and citation omitted)).

**B. Leave to amend is denied**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). As discussed above, Plaintiff lacks standing as a registered voter, regardless of whether or not she actually voted in 2025. Even if Plaintiff could allege that she was a candidate for Mayor of New York City in the 2025 election, which could potentially give her standing, *see Bost v. Ill. State Bd. of Elect.*, 607 U.S. 71, 76 (2026), her claims would still fail. Her allegations rest entirely on her personal understanding of information published by the NYC BOE. To the extent Plaintiff is alleging that Defendants knowingly facilitated election irregularities, such allegations are purely speculative and do not satisfy Rule 8. *See Iqbal*, 556 U.S. at 678 (holding that a complaint that merely "tenders naked assertions devoid of further factual enhancement" fails to satisfy Rule 8's pleading standard (quotation marks and alterations omitted)); *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (explaining that courts "have no obligation to entertain pure speculation and conjecture").

Moreover, even if the Court accepted Plaintiff's conjecture as true, the types of election irregularities she suggests, such as mistakes in ballot calculations, are insufficient to state a constitutional claim under Section 1983. *See Shannon v. Jacobowitz*, 394 F.3d 90, 96 (2d Cir. 2005) "[G]arden variety election irregularities do not violate the Due Process Clause, even if they control the outcome of the vote or election." (quotation marks and citation omitted)); *Gelb v. Bd. of Elections of City of N.Y.*, 224 F.3d 149, 154 (2d Cir. 2000) ("It is thirty-year-old doctrine in this Circuit that a § 1983 action invoking the Equal Protection Clause is not available

to remedy election process errors in the absence of a showing of 'intentional or purposeful discrimination.'"); *Gold v. Feinberg,* 101 F.3d 796, 801 (2d Cir. 1996) (holding that election irregularities constitute due process violations under Section 1983 only if there are "substantiated allegations of any wrongful intent on the part of state officials" (internal quotation marks and citation omitted); *Powell v. Power*, 436 F.2d 84, 88 (2d Cir. 1970) (rejecting equal protection claim where allegations of state's erroneous counting of votes cast by voters unqualified to participate)); *Democratic Cong. Campaign Comm. v. Kosinski*, 614 F. Supp. 3d 20, 51 (S.D.N.Y. 2022) (reviewing cases and concluding that "election officials' errors tend to result in due process violations only when those errors are manifested through official policy or instruction and when voters case invalid ballots in reliance on those errors"); *see also Bodine v. Elkhart Cnty. Election Bd.*, 788 F.2d 1270, 1271-72 (7th Cir.1986) ("The Constitution is not an election fraud statute. . . . It is not every election irregularity . . . which will give rise to a constitutional claim and an action under section 1983 . . . . [S]ection 1983 is implicated only when there is *willful* conduct which undermines the organic processes by which candidates are elected." (citations and quotation marks omitted)).

Because the Court finds that the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend her complaint.

**CONCLUSION**

The Court dismiss the complaint without prejudice for lack of standing, and therefore, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

The Court directs the Clerk of Court to enter judgment dismissing this action.

SO ORDERED.

Dated: October 5, 2026
New York, New York

Louis L. Stanton
Louis L. Stanton
U.S.D.J.